# Exhibit A

Page 5
December 10, 2021

*facilities; except, no building or structure with an impervious roof shall be permitted within the seventy (70) acres open space area.*

The Floodplain Coordinator attended many public hearings regarding the above petitions for both the Planning Advisory Board (PAB) and City Council (CC). This includes but is not limited to the PAB meetings on 02/13/19 and 10/11/19, where it is documented in the meeting minutes that Christa Carrera, Floodplain Coordinator provided comments on the petitions. It should be noted that while staff was in attendance at multiple CC meetings it is not recorded in the minutes that the Floodplain Coordinator addressed the council in response to any questions.

Since the adoption of the PD, many questions and concerns have risen pertaining to the open space and CRS and points and discounts. To address those questions and concerns, the Floodplain Coordinator has provided the following information:

**How was the seventy (70) acres determined?** The seventy (70) acres number was derived from the following map used to calulate golf course open space for the CRS Activity 420 for Open Space Preservation (OSP):



**Acreage of Open Space Located In the 2012 Special Flood Hazard Area**

**Golf Courses**

City of Naples, FL

Date: 9/21/2018

| | |
|---|---|
| BEAR'S PAW COUNTRY CLUB | 154.95 |
| GREY OAKS | 156.44 |
| HOLE IN THE WALL | 175.64 |
| MOORINGS COUNTRY CLUB | 28.34 |
| NAPLES GOLF & BEACH CLUB | 70.94 |
| ROYAL POINCIANA | 295.59 |
| WINDSTAR | 9.69 |
| TOTAL | 891.59 |

The light green shaded area shown on the map represents the portion of the Naples Beach Club golf course that is currently in a Special Flood Hazard Area based on the 2012 Flood Insurance Rate Map and is creditable in the CRS Activity 420 OSP.

**How Are Those Acres Calculated Into Points?** The below spreadsheet is used during each CRS verification visit to calculate the CRS points. This information can change based on updated flood maps, land sales and/or land aquisitions, new buildings, demolished buildings, updated deed restrictions, etc. This means that the numbers can and will change over the years.

*E thics above all else... Service to others before self... Quality in all that we do.*

# Exhibit B

FIGURE 1.



The Naples Beach Hotel
& Golf Club

April 30, 2013

Michael R. Bauer, Ph.D.
Natural Resources Manager
735 8th Street South
City of Naples, Florida
239 213-1031

RE: PERMIT APPLICATION TO EXPAND EXISTING GOLF COURSE LAKE

Dear Dr. Bauer:

We are petitioning the City of Naples for a permit to do work on an existing
lake on the golf course of the hotel just north of the Clubhouse.

The lake is located between the 10th and 18th fairways and is illustrated on
the attached Site Plan. We are proposing to excavate an area of fairway
adjacent to the lake that is problematic for us, as the soil conditions inhibit
percolation and the turf suffers as a result. This excavation will improve
both play and reduce maintenance efforts on our part.

We are proposing to excavate an approximate area 210 feet long by 72 feet
deep on the south east side of the lake illustrated on the attached Site Plan.
We will provide a littoral shelf around the perimeter of the excavation at a
distance of 15 feet and plant with littoral plantings that will tolerate the
somewhat brackish conditions of the lake, as illustrated on the attached
Littoral Planting Typical Section. It will be graded down from the point of
the littoral shelf to the existing lake bottom.

We plan to do this work in tandem with the installation of a new irrigation
system for the course in early summer.  I am enclosing a check in the
amount of $75 made payable to the City of Naples. Thank you for your
consideration.

Sincerely,

Michael Watkins
President

Figure 2.



CALVERA-STROPPES
LANDSCAPE ARCHITECTS INC.
185 10TH ST. SOUTH, NAPLES, FLORIDA
239-643-0077

LOCATION AERIAL

KEY

LAKE EXPANSION AREA

LITTORAL AREA

#10 TEE

#18

DRIVING RANGE

CLUBHOUSE

NAPLES BEACH HOTEL & GOLF CLUB
SITE PLAN
GOLF COURSE LAKE EXPANSION
851 GULFSHORE BLVD NORTH
NAPLES, FLORIDA

Book 138· Page _____

Agenda Item 14
Meeting of 6/12/13

RESOLUTION 13-13304

A RESOLUTION APPROVING THE ISSUANCE OF A PERMIT TO THE NAPLES BEACH HOTEL AND GOLF CLUB FOR THE EXPANSION OF A LAKE AND THE CREATION OF A LITTORAL SHELF WITH NATIVE WETLAND PLANTINGS ON THE HOTEL'S GOLF COURSE IN ORDER TO IMPROVE PLAY, REDUCE MAINTENANCE, IMPROVE WATER QUALITY, AND ENHANCE WETLAND HABITAT; AND PROVIDING AN EFFECTIVE DATE.

WHEREAS,     the Naples Beach Hotel and Golf Club has petitioned City Council for a permit to do work on an existing lake on the hotel's golf course; and

WHEREAS,     Section 52-92 (c) of the Code of Ordinances, requires that any person desiring to construct or excavate any lake must first obtain permission to do so from City Council; and

WHEREAS,     after the plan is presented to City Council, Council has the discretion to allow a permit to be issued; and

WHEREAS,     City staff have reviewed the site plan, littoral planting illustration, and made a site visit; and

WHEREAS,     City staff have determined that the project is in the best interest of the City and will result in improvements to the water quality of the stormwater runoff and enhance its wetland habitat;

NOW, THEREFORE, BE IT RESOLVED BY THE COUNCIL OF THE CITY OF NAPLES, FLORIDA:

Section 1.     That the City Manager is hereby authorized to issue a permit to the Naples Beach Hotel and Golf Club for the expansion of a lake and the creation of a littoral shelf with native wetland plantings on the hotel's golf course that will result in improved play, reduced maintenance, improved water quality and enhanced wetland habitat.

Section 2.     This resolution shall take effect immediately upon adoption.

PASSED IN OPEN AND REGULAR SESSION OF THE CITY COUNCIL OF THE CITY OF NAPLES, FLORIDA, THIS 12TH DAY OF JUNE, 2013.

Attest:

_Patricia L. Rambosk_
Patricia L. Rambosk, City Clerk

_John F. Sorey III_
John F. Sorey III, Mayor

Approved as to form and legality:

_Robert D. Pritt_
Robert D. Pritt, City Attorney

M:\REF\COUNCIL\RES\2013\13-13304

Date filed with City Clerk: _6-13-13_

# Exhibit C

DEPARTMENT OF HOMELAND SECURITY FEDERAL
EMERGENCY MANAGEMENT AGENCY

**O.M.B. NO. 1660-0016**
**Expires February 28, 2014**

## OVERVIEW & CONCURRENCE FORM

### PAPERWORK BURDEN DISCLOSURE NOTICE

Public reporting burden for this form is estimated to average 1 hours per response. The burden estimate includes the time for reviewing instructions, searching existing data sources, gathering and maintaining the needed data, and completing, reviewing, and submitting the form. You are not required to respond to this collection of information unless it displays a valid OMB control number. Send comments regarding the accuracy of the burden estimate and any suggestions for reducing this burden to: Information Collections Management, Department of Homeland Security, Federal Emergency Management Agency, 1800 South Bell Street, Arlington, VA 20958-3005, Paperwork Reduction Project (1660-0016). Submission of the form is required to obtain or retain benefits under the National Flood Insurance Program. **Please do not send your completed survey to the above address.**

### PRIVACY ACT STATEMENT

**AUTHORITY:** The National Flood Insurance Act of 1968, Public Law 90-448, as amended by the Flood Disaster Protection Act of 1973, Public Law 93-234.

**PRINCIPAL PURPOSE(S):** This information is being collected for the purpose of determining an applicant's eligibility to request changes to National Flood Insurance Program (NFIP) Flood Insurance Rate Maps (FIRM).

**ROUTINE USE(S):** The information on this form may be disclosed as generally permitted under 5 U.S.C § 552a(b) of the Privacy Act of 1974, as amended. This includes using this information as necessary and authorized by the routine uses published in DHS/FEMA/NFIP/LOMA-1 National Flood Insurance Program (NFIP); Letter of Map Amendment (LOMA) February 15, 2006, 71 FR 7990.

**DISCLOSURE:** The disclosure of information on this form is voluntary; however, failure to provide the information requested may delay or prevent FEMA from processing a determination regarding a requested change to a (NFIP) Flood Insurance Rate Maps (FIRM).

### A.  REQUESTED RESPONSE FROM DHS-FEMA

This request is for a:  (check one)

☐  CLOMR:  A letter from DHS-FEMA commenting on whether a proposed project, if built as proposed, would justify a map revision, or proposed hydrology changes (See 44 CFR Ch. 1, Parts 60, 65 & 72).

☒  LOMR:  A letter from DHS-FEMA officially revising the current NFIP map to show the changes to floodplains, regulatory floodway, or flood elevations. (See 44 CFR Ch. 1, Parts 60, 65 & 72).

### B.  OVERVIEW

1.  The NFIP map panel(s) affected for all impacted communities is (are):

| Community No. | Community Name | State | Map No. | Panel No. | Effective Date |
|---|---|---|---|---|---|
| Ex: 480301 480287 | City of Katy Harris County | TX TX | 48473C 48201C | 0005D 0220G | 02/08/83 09/28/90 |
| 120067 | Collier County | FL | 120067C | 0581H | 05/16/12 |
| 125130 | Naples, City of | FL | 125130C | 0391H & 0393H | 05/16/12 |

2.  a    Flooding Source: Gulf of Mexico

☐ Riverine    ☒ Coastal    ☐ Shallow Flooding (e.g., Zones AO and AH)

b. Types of Flooding:    ☐ Alluvial fan    ☐ Lakes    ☐ Other (Attach Description)

3. Project Name/Identifier: 851 Gulf Shore Blvd N

4. FEMA Zone designations affected: AE, VE        (Choices A, AH, AO, A1-A30, A99, AE, AR, V, V1-V30, VE, B, C, D, X)

5. Basis for Request and Type of Revision: Updated topographic survey

**FEMA Form 086-0-27, (2/2011)**          **Previously FEMA Form 81-89**          **MT-2 Form 1   Page 1 of 3**

a. The basis for this revision request is (check all that apply)

☐ Physical Change          ☐ Improved Methodology/Data    ☐ Regulatory Floodway Revision    ☐ Base Map Changes

☐ Coastal Analysis         ☐ Hydraulic Analysis           ☐ Hydrologic Analysis             ☐ Corrections

☐ Weir-Dam Changes         ☐ Levee Certification          ☐ Alluvial Fan Analysis           ☐ Natural Changes

☒ New Topographic Data     ☐ Other (attach Description)

Note:  A photograph and narrative description of the area of concern is not required, but is very helpful during review.

b. The area of revision encompasses the following structures (check all that apply)

Structures:    ☐ Channelization         ☐ Levee/Floodwall          ☐ Bridge/Culvert

               ☐ Dam                    ☐ Fill                     ☐ Other (Attach Description)

6. ☐  Documentation of ESA compliance is submitted (required to initiate CLOMR review). Please refer to the instructions for more information

## C.  REVIEW FEE

Has the review fee for the appropriate request category been included?          ☐ Yes, Fee Amount:  $_____

                                                                                ☒ No, Attach Explanation

**Please see the DHS-FEMA website at** http://fema.gov/plan/prevent/fhm/frm_fees.shtm **for Fee Amounts and Exemptions.**

## D.  SIGNATURE

All documents submitted in support of this request are correct to the best of my knowledge.  I understand that any false statement may be punishable by fine or imprisonment under Title 18 of the United States code, Section 1001.

| Name Michael E. Watkins, President | Company  Naples Golf and Beach Club, Inc. | |
|---|---|---|
| Mailing Address 851 Gulf Shore Blvd, North Naples, Florida 34102 | Daytime Telephone No. 239-261-2222 | FAX No. |
| | EMAIL ADDRESS M.Watkins@naplesbeachhotel.com | |

Signature of Requester (Required)          *Mike Watkins*                    Date  9/25/20

As the community official responsible for floodplain management, I hereby acknowledge that we have received and reviewed this Letter of of Map Revision (LOMR) or conditional LOMR request.  Based upon the community's review, we find the completed or proposed project meets or is designed to meet all of the community floodplain management requirements, including the requirement for when fill is placed in the regulatory floodway, and that all necessary Federal, State, and local permits have been, or in the case of a conditional LOMR, will be obtained. For conditional LOMR request, the applicant has documented Endangered Species Act (ESA) compliance to DHS/FEMA prior to DHS/FEMA's review of the Conditional LOMR application. For LOMR request, I acknowledge that compliance with sections 9 and 10 of the ESA has been achieved independently of DHS/FEMA's process.  For actions authorized, funded, or being carried out by Federal or State agencies, documentation from the agency showing its compliance with Section 7(a)(2) of the ESA will be submitted. In addition, we have determined that the land and any existing or proposed structures to be removed from the SFHA are or will be reasonably safe from flooding as defined in 44 CFR 65.2(c), and that we have available upon request by DHS/FEMA, all analyses and documentation used to make this determination.

| Community Official's Name and Title Christa Carrera, Flood Plain Coordinator | Community Name City of Naples | |
|---|---|---|
| Mailing Address 295 Riverside Circle Naples FL 34102 | Daytime Telephone No. (239) 213-5039 | FAX No. (239) 213-7106 |
| | EMAIL ADDRESS ccarrera@naplesgov.com | |
| Community Official's signature (required)   *Christa Carrera, CFM* | | Date 9/29/2020 |

## CERTIFICATION BY REGISTRATION PROFESSIONAL ENGINEER AND/OR LAND SURVEYOR

This certification is to be signed and sealed by a licensed land surveyor, registered professional engineer, or architect authorized by law to certify elevation information data, hydrologic and hydraulic analysis, and any other supporting information as per NFIP regulations paragraph 65.2(b) and as described in the MT-2 Forms instruction. All documents submitted in support of this request are correct to the best of my knowledge. I understand that any false statement may be punishable by fine or imprisonment under Title 18 of the United States Code, Section 1001.

| Certifier's Name Marc Damon, P.E. | License No. 70615 | Expiration Date 2/28/2021 |
|---|---|---|
| Company Name Humiston & Moore Engineers | Telephone No. (239)594-2021 | Fax No. (239)594-2025 |
| Signature | E-mail Address mdamon@humistonandmoore.com | Date |

**Ensure the forms that are appropriate to your revision request are included in your submittal.**

Form name and (Number)                         Required if.....

☐ Riverine Hydrology & Hydraulics Form (Form 2)    New or revised discharges or water-surface elevations

☐ Riverine Structures Form (Form 3)    Channel is modified, addition/revision of bridge/culverts, addition/revision of levee/floodwall, addition/revision of dam

☒ Coastal Analysis Form (Form 4)    New or revised coastal elevations

☐ Coastal Structures Form (Form 5)    Addition/revision of coastal structure

☐ Alluvial Fan Flooding Form (Form 6)    Flood control measures on alluvial fans

Seal (optional)

DEPARTMENT OF HOMELAND SECURITY
FEDERAL EMERGENCY MANAGEMENT AGENCY
**COASTAL ANALYSIS FORM**

**O.M.B. NO. 1660-0016**
**Expires February 28, 2014**

**PAPERWORK BURDEN DISCLOSURE NOTICE**

Public reporting burden for this form is estimated to average 1 hour per response. The burden estimate includes the time for reviewing instructions, searching existing data sources, gathering and maintaining the needed data, and completing, reviewing, and submitting the form. You are not required to respond to this collection of information unless a valid OMB control number appears in the upper right corner of this form. Send comments regarding the accuracy of the burden estimate and any suggestions for reducing this burden to: Information Collections Management, Department of Homeland Security, Federal Emergency Management Agency, 1800 South Bell Street, Arlington VA 20958-3005, Paperwork Reduction Project (1660-0016). Submission of the form is required to obtain or retain benefits under the National Flood Insurance Program. **Please do not send your completed survey to the above address.**

**PRIVACY ACT STATEMENT**

**AUTHORITY:** The National Flood Insurance Act of 1968, Public Law 90-448, as amended by the Flood Disaster Protection Act of 1973, Public Law 93-234.

**PRINCIPAL PURPOSE(S):** This information is being collected for the purpose of determining an applicant's eligibility to request changes to National Flood Insurance Program (NFIP) Flood Insurance Rate Maps (FIRM).

**ROUTINE USE(S):** The information on this form may be disclosed as generally permitted under 5 U.S.C § 552a(b) of the Privacy Act of 1974, as amended. This includes using this information as necessary and authorized by the routine uses published in DHS/FEMA/NFIP/LOMA-1 National Flood Insurance Program (NFIP); Letter of Map Amendment (LOMA) February 15, 2006, 71 FR 7990.

**DISCLOSURE:** The disclosure of information on this form is voluntary; however, failure to provide the information requested may delay or prevent FEMA from processing a determination regarding a requested change to a NFIP Flood Insurance Rate Maps (FIRM).

Flooding Source: Gulf of Mexico

Note:  Fill out one form for each flooding source studied.

**A.  COASTLINE TO BE REVISED**

Describe limits of study area: FEMA transect 43

**B.  EFFECTIVE FIS**

The area being revised in the effective FIS was studied by detailed methods using (check all that apply):

- ☐ Storm surge modeling
- ☒ Wave height computations
- ☐ Wave overtopping computations
- ☐ Primary Frontal Dune Assessment
- ☐ Wave setup computations
- ☐ Wave runup computations
- ☐ Dune erosion computations
- ☐ N/A (area not studied by detailed methods)

**C.  REVISED ANALYSIS**

1. Number of transects in revised analyses: 3

2. Information used to prepare the revision (check all that apply):

- ☐ Wave setup analyses (complete items 3, 4, and 5 below)
- ☐ Stillwater elevation determinations (complete item 3)
- ☐ Erosion considerations (complete item 4)
- ☐ Wave runup analysis (complete items 4 and 5)
- ☒ Wave height analysis (complete items 4 and 5)

- ☐ Wave overtopping assessment (complete items 4 and 5)
- ☒ More detailed topographic information (complete Section E)
- ☐ Shore protection structures (attach completed Coastal Structures Form - Form 5)
- ☐ Primary frontal dune assessment (complete item 5)
- ☐ Other, attach basis of revision request with an explanation

3. Stillwater Elevation Determination

   a. How were Stillwater elevations determined?

      ☐ Gage analysis (if revised gage analysis was used, provide copies of gage data and revised analysis)

      ☐ Storm surge analysis

      ☐ Other (describe):

   b. Specify what datum was used in the calculations:  NAVD88

      If not the FIS datum, have the calculations been adjusted to the FIS datum?  ☐ Yes  ☐ No   Conversion factor:

   c. Was the storm surge analysis revised?   ☐ Yes  ☒ No

   d. If a new storm surge model was used, attach a detailed description of the difference between the current and the revised analysis, and why the revised analysis should replace the current analysis.

## C. REVISED ANALYSIS (continued)

e. If wave setup was computed, attach a description of methodology used.

Amount of wave setup added to stillwater elevation: _____ feet

4. <u>Revised Analysis</u> (i.e., erosion, wave height, wave runup, primary frontal dune, and wave overtopping)

If DHS/FEMA procedures were utilized to perform the revision, attach a detailed description of differences between the current and the revised analysis, and why the revised analysis should replace the current analysis.

If DHS/FEMA procedures were not utilized to perform the revision, provide full documentation on methodology and/or models used; including operational program, and detailed difference between methodology and/or models utilized and DHS/FEMA's methodology and/or models. Also, attach an explanation of why new methodology and/or models should replace current methodology and/or models.

If revision reflects more detailed topographic information and fill has been/will be placed in a V-Zone, and is not protected from erosion by a shore protection structure, provide a detailed description of how the fill has been treated in the revised analysis.

5. <u>Wave Runup, Wave Height, and Wave Overtopping Analysis</u>

Wave height analysis along a transect is greatly affected by starting wave conditions that propagate inland. Wave runup and overtopping analysis are typically considered when wave heights and/or wave runup are close to or greater than the crest of shore protection structures or natural land forms.

a. Was an analysis performed to determine starting wave height and period for input into WHAFIS?
   If Yes, attach an explanation of the method utilized. If No, explain why these analyses were not performed.
   ☐ Yes   ☒ No

b. Was wave setup included in wave height analysis and removed for erosion and wave runup analysis?
   ☐ Yes   ☒ No

c. Was an overtopping analysis performed for any coastal shore protection structures or natural land forms that may be overtopped?
   ☐ Yes   ☒ No

   If Yes, attach an explanation of the methodology utilized and describe in detail the results of the analysis.
   If overtopping was not analyzed, attach an explanation for why these analyses were not performed.

## D. RESULTS

1. Stillwater storm surge elevation:   9.84 feet   NAVD88 Datum

2. Wave setup:   1.4   feet  (included with storm surge elevation)

3. Starting deep-water significant wave condition:
   height 0 _____  period   14s

4. Maximum wave runup height elevation:   NA feet

5. Maximum wave runup elevation:   NA feet

6. Estimated amount of maximum overtopping:   NA   cfs/feet

7. Has this revision changed the Limit of Moderate Wave Action (LiMWA)
   ☐ Yes   ☐ No   ☒ N/A

8. The area designated as coastal high hazard areas (V Zones) have:
   ☐ increased   ☒ decreased   ☐ both
   Attach a description where they have increased and/or decreased
   See page 3 of attached report.

9. As a result of the revised analysis, the V-Zone location has shifted a maximum of   181.5'   seaward and   NA   feet landward of its existing position.

10. Does this revision reflect the location of the primary frontal dune?
    ☐ Yes   ☒ No

11. The Base Flood Elevations have:
    ☐ increased   ☒ decreased
    a. What was the greatest increase?   0   feet
    b. What was the greatest decrease?   1   feet

12. The special flood hazard area has:
    ☐ increased   ☐ decreased   ☐ both
    Attach a description where it has increased or decreased
    The proposed changes would bring part of the current the Zones VE-13 into the Zone AE-12  Please refer to page 3 of attached report and submitted workmap for detail.

## MAPPING REQUIREMENTS

A certified topographic map must be submitted showing the following information (where applicable): effective, existing conditions, and proposed conditions 1%-annual-chance floodplain boundaries, revised shoreline due to either erosion or accretion, location and alignment of all transects, correct location and alignment of any structures, current community easements and boundaries, boundary of the requester's property, certification of a professional engineer registered in the subject State, location and description of reference marks, and the referenced vertical datum (NGVD, NAVD, etc.).

Note that the existing or proposed conditions floodplain boundaries to be shown on the revised FIRM must tie-in with the effective floodplain boundaries. Please attach a copy of the current FIRM annotated to show the revised 1%-annual-chance floodplain boundaries that tie-in with effective 1%-annual-chance floodplain boundaries along the entire extent of the area of revision.





# Exhibit D

| Page 1 of 4 | Issue Date: December 28, 2020 | Effective Date: May 13, 2021 | Case No.: 20-04-6275P | LOMR-APP |
|---|---|---|---|---|



# Federal Emergency Management Agency
### Washington, D.C. 20472

## LETTER OF MAP REVISION
## DETERMINATION DOCUMENT

| COMMUNITY AND REVISION INFORMATION | | PROJECT DESCRIPTION | BASIS OF REQUEST |
|---|---|---|---|
| **COMMUNITY** | **City of Naples**<br>**Collier County**<br>**Florida** | **NO PROJECT** | **COASTAL ANALYSIS**<br>**UPDATED TOPOGRAPHIC DATA** |
| | COMMUNITY NO.: 125130 | | |
| **IDENTIFIER** | 851 Gulf Shore Blvd N | APPROXIMATE LATITUDE AND LONGITUDE: 26.157, -81.809<br>SOURCE: Google Earth Pro    DATUM: NAD 83 | |

| ANNOTATED MAPPING ENCLOSURES | ANNOTATED STUDY ENCLOSURES |
|---|---|
| TYPE: FIRM*   NO.: 12021C0391H   DATE: May 16, 2012<br>TYPE: FIRM*   NO.: 12021C0393H   DATE: May 16, 2012 | NO REVISION TO THE FLOOD INSURANCE STUDY REPORT |

Enclosures reflect changes to flooding sources affected by this revision.
\* FIRM - Flood Insurance Rate Map

### FLOODING SOURCE AND REVISED REACH

Gulf of Mexico - an area centered approximately 580 feet southwest of the intersection of Gulf Shore Boulevard North and Oleander Drive

### SUMMARY OF REVISIONS

| Flooding Source | Effective Flooding | Revised Flooding | Increases | Decreases |
|---|---|---|---|---|
| Gulf of Mexico | Zone VE<br>BFEs* | Zone AE<br>BFEs | NONE<br>NONE | YES<br>YES |

\* BFEs - Base Flood Elevations

## DETERMINATION

This document provides the determination from the Department of Homeland Security's Federal Emergency Management Agency (FEMA) regarding a request for a Letter of Map Revision (LOMR) for the area described above. Using the information submitted, we have determined that a revision to the flood hazards depicted in the National Flood Insurance Program (NFIP) map is warranted. This document revises the effective NFIP map, as indicated in the attached documentation. Please use the enclosed annotated map panel revised by this LOMR for floodplain management purposes and for all flood insurance policies and renewals in your community.

This determination is based on the flood data presently available. The enclosed documents provide additional information regarding this determination. If you have any questions about this document, please contact the FEMA Mapping and Insurance eXchange toll free at 1-877-336-2627 (1-877-FEMA MAP) or by letter addressed to the LOMC Clearinghouse, 3601 Eisenhower Avenue, Suite 500, Alexandria, VA 22304-6426. Additional information about the NFIP is available on our website at https://www.fema.gov/flood-insurance.

Patrick "Rick" F. Sacbibit, P.E., Branch Chief
Engineering Services Branch
Federal Insurance and Mitigation Administration

20-04-6275P

102-D-A

| Page 2 of 4 | Issue Date: December 28, 2020 | Effective Date: May 13, 2021 | Case No.: 20-04-6275P | LOMR-APP |
|---|---|---|---|---|



# Federal Emergency Management Agency
Washington, D.C. 20472

## LETTER OF MAP REVISION
## DETERMINATION DOCUMENT (CONTINUED)

### COMMUNITY INFORMATION

**APPLICABLE NFIP REGULATIONS/COMMUNITY OBLIGATION**

We have made this determination pursuant to Section 206 of the Flood Disaster Protection Act of 1973 (P.L. 93-234) and in accordance with the National Flood Insurance Act of 1968, as amended (Title XIII of the Housing and Urban Development Act of 1968, P.L. 90-448), 42 U.S.C. 4001-4128, and 44 CFR Part 65. Pursuant to Section 1361 of the National Flood Insurance Act of 1968, as amended, communities participating in the NFIP are required to adopt and enforce floodplain management regulations that meet or exceed NFIP criteria. These criteria, including adoption of the FIS report and FIRM, and the modifications made by this LOMR, are the minimum requirements for continued NFIP participation and do not supersede more stringent State/Commonwealth or local requirements to which the regulations apply.

**COMMUNITY REMINDERS**

We based this determination on the 1-percent-annual-chance stillwater elevations computed in the FIS for your community. A comprehensive restudy of your community's flood hazards could establish greater flood hazards in this area.

Your community must regulate all proposed floodplain development and ensure that permits required by Federal and/or State/Commonwealth law have been obtained. State/Commonwealth or community officials, based on knowledge of local conditions and in the interest of safety, may set higher standards for construction or may limit development in floodplain areas. If your State/Commonwealth or community has adopted more restrictive or comprehensive floodplain management criteria, those criteria take precedence over the minimum NFIP requirements.

We will not print and distribute this LOMR to primary users, such as local insurance agents or mortgage lenders; instead, the community will serve as a repository for the new data. We encourage you to disseminate the information in this LOMR by preparing a news release for publication in your community's newspaper that describes the revision and explains how your community will provide the data and help interpret the NFIP maps. In that way, interested persons, such as property owners, insurance agents, and mortgage lenders, can benefit from the information.

We have designated a Consultation Coordination Officer (CCO) to assist your community. The CCO will be the primary liaison between your community and FEMA. For information regarding your CCO, please contact:

Ms. Kristen M. Martinenza, P.E., CFM
Chief, Risk Analysis Branch
Federal Emergency Management Agency
Rhodes Building, 3005 Chamblee Tucker Road
Atlanta, GA 30341
(770) 220-3174

This determination is based on the flood data presently available. The enclosed documents provide additional information regarding this determination. If you have any questions about this document, please contact the FEMA Mapping and Insurance eXchange toll free at 1-877-336-2627 (1-877-FEMA MAP) or by letter addressed to the LOMC Clearinghouse, 3601 Eisenhower Avenue, Suite 500, Alexandria, VA 22304-6426. Additional information about the NFIP is available on our website at https://www.fema.gov/flood-insurance.

Patrick "Rick" F. Sacbibit, P.E., Branch Chief
Engineering Services Branch
Federal Insurance and Mitigation Administration

20-04-6275P

102-D-A

| Page 3 of 4 | Issue Date: December 28, 2020 | Effective Date: May 13, 2021 | Case No.: 20-04-6275P | LOMR-APP |



# Federal Emergency Management Agency
### Washington, D.C. 20472

## LETTER OF MAP REVISION
## DETERMINATION DOCUMENT (CONTINUED)

**STATUS OF THE COMMUNITY NFIP MAPS**

We are processing a revised FIRM and FIS Report for Collier County in our countywide format; therefore, we will not physically revise and republish the FIRM for your community to incorporate the modifications made by this LOMR at this time. Preliminary copies of the countywide FIRM and FIS report, which present information from the effective FIRMs and FIS reports for your community and other incorporated communities in Collier County, were submitted to your community for review on December 31, 2019. The preliminary copies of the FIS report and FIRM panels are based on a revised coastal analysis, while the modifications made by this LOMR are based on the effective data. Therefore this LOMR will be superseded when the preliminary FIRM panels and FIS report becomes effective.

This determination is based on the flood data presently available. The enclosed documents provide additional information regarding this determination. If you have any questions about this document, please contact the FEMA Mapping and Insurance eXchange toll free at 1-877-336-2627 (1-877-FEMA MAP) or by letter addressed to the LOMC Clearinghouse, 3601 Eisenhower Avenue, Suite 500, Alexandria, VA 22304-6426. Additional information about the NFIP is available on our website at https://www.fema.gov/flood-insurance.

Patrick "Rick" F. Sacbibit, P.E., Branch Chief
Engineering Services Branch
Federal Insurance and Mitigation Administration

20-04-6275P                    102-D-A

| Page 4 of 4 | Issue Date: December 28, 2020 | Effective Date: May 13, 2021 | Case No.: 20-04-6275P | LOMR-APP |



# Federal Emergency Management Agency
Washington, D.C. 20472

## LETTER OF MAP REVISION
## DETERMINATION DOCUMENT (CONTINUED)

### PUBLIC NOTIFICATION OF REVISION

A notice of changes will be published in the *Federal Register*.   This information also will be published in your local newspaper on or about the dates listed below, and through FEMA's Flood Hazard Mapping website at https://www.floodmaps.fema.gov/fhm/bfe_status/bfe_main.asp

LOCAL NEWSPAPER        Name:   *Naples Daily News*

Dates:   January 6, 2021 and January 13, 2021

Within 90 days of the second publication in the local newspaper, any interested party may request that we reconsider this determination. Any request for reconsideration must be based on scientific or technical data.   Therefore, this letter will be effective only after the 90-day appeal period has elapsed and we have resolved any appeals that we receive during this appeal period.   Until this LOMR is effective, the revised flood hazard determination presented in this LOMR may be changed.

---

This determination is based on the flood data presently available.   The enclosed documents provide additional information regarding this determination.   If you have any questions about this document, please contact the FEMA Mapping and Insurance eXchange toll free at 1-877-336-2627 (1-877-FEMA MAP) or by letter addressed to the LOMC Clearinghouse, 3601 Eisenhower Avenue, Suite 500, Alexandria, VA   22304-6426.   Additional information about the NFIP is available on our website at https://www.fema.gov/flood-insurance.

Patrick "Rick" F. Sacbibit, P.E., Branch Chief
Engineering Services Branch
Federal Insurance and Mitigation Administration

20-04-6275P

102-D-A





# Exhibit E



# Federal Emergency Management Agency

Washington, D.C. 20472

May 18, 2021

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

IN REPLY REFER TO:
Case No.:       20-04-6275P
Community Name: City of Naples, FL
Community No.:   125130
FIRM Panel Affected: 12021C0391H,
                          12021C0393H

The Honorable Teresa L. Heitmann
Mayor, City of Naples
735 8th Street South
Naples, FL 34102

116

Dear Mayor Heitmann:

In a Letter of Map Revision (LOMR) dated December 28, 2020, you were notified of proposed flood hazard determinations affecting the Flood Insurance Rate Map (FIRM) and Flood Insurance Study (FIS) report for the City of Naples, Collier County, FL. These determinations were for Gulf of Mexico - an area centered approximately 580 feet southwest of the intersection of Gulf Shore Boulevard North and Oleander Drive. The 90-day appeal period that was initiated on January 13, 2021, when the Department of Homeland Security's Federal Emergency Management Agency (FEMA) published a notice of proposed Flood Hazard Determinations in *The Naples Daily News* has elapsed.

FEMA received no valid requests for changes to the modified flood hazard information. Therefore, the modified flood hazard information for your community that became effective on May 13, 2021, remains valid and revises the FIRM and FIS report that were in effect prior to that date. The modifications are pursuant to Section 206 of the Flood Disaster Protection Act of 1973 (Public Law 93-234) and are in accordance with the National Flood Insurance Act of 1968, as amended (Title XIII of the Housing and Urban Development Act of 1968, Public Law 90-448), 42 U.S.C. 4001-4128, and 44 CFR Part 65. The community number(s) and suffix code(s) are unaffected by this revision. The community number and appropriate suffix code as shown above will be used by the National Flood Insurance Program (NFIP) for all flood insurance policies and renewals issued for your community.

FEMA has developed criteria for floodplain management as required under the above-mentioned Acts of 1968 and 1973. To continue participation in the NFIP, your community must use the modified flood hazard information to carry out the floodplain management regulations for the NFIP. The modified flood hazard information will also be used to calculate the appropriate flood insurance premium rates for all new buildings and their contents and for the second layer of insurance on existing buildings and their contents.

If you have any questions regarding the necessary floodplain management measures for your community or the NFIP in general, please contact the Mitigation Division Director, FEMA Region IV, in Atlanta, Georgia either by telephone at (770) 220-5406, or in writing at 3003 Chamblee Tucker Road, Atlanta, Georgia, 30341.

2

If you have any questions regarding the LOMR, the proposed flood hazard determinations, or mapping issues in general, please call the FEMA Map Information eXchange, toll free, at (877) 336-2627 (877-FEMA MAP).

Sincerely,

Patrick "Rick" F. Sacbibit, P.E., Branch Chief
Engineering Services Branch
Federal Insurance and Mitigation Administration

cc:     Ms. Christa Carrera, CFM
        Floodplain Coordinator
        City of Naples

        Mr. Michael E. Watkins
        President
        Naples Golf and Beach Club, Inc.

        Mr. Marc Damon, P.E.
        Project Engineer
        Humiston & Moore Engineers

# Exhibit F

FW: [Non-DoD Source] Violation of National Environmental Policy Act (NEPA)

From: Federici, Luigi G CIV USARMY CESAJ (USA) (luigi.g.federici@usace.army.mil)

To:     gregbmyers@verizon.net

Date:   Friday, March 1, 2024 at 05:32 PM EST

**From:** Federici, Luigi G CIV USARMY CESAJ (USA)
**Sent:** Friday, March 1, 2024 4:47 PM
**To:** gregbmyers@verizon.net
**Subject:** FW: [Non-DoD Source] Violation of National Environmental Policy Act (NEPA)

**From:** Federici, Luigi G CIV USARMY CESAJ (USA)
**Sent:** Wednesday, February 28, 2024 6:27 PM
**To:** 'gregbmyers@verizon.net' <gregbmyers@verizon.net>; Hamor, Michelle L CIV USARMY CENAO (USA)
<Michelle.L.Hamor@usace.army.mil>
**Cc:** SAJ-RD-Enforcement <saj-rd-enforcement@usace.army.mil>; 'SD_ERP_Permit@dep.state.fl.us'
<SD_ERP_Permit@dep.state.fl.us>; Rabney, Steven J CIV USARMY CESAJ (USA) <Steven.J.Rabney@usace.army.mil>;
Gilbert, Michelle L CIV USARMY CESAJ (USA) <Michelle.L.Gilbert@usace.army.mil>
**Subject:** FW: [Non-DoD Source] Violation of National Environmental Policy Act (NEPA)

Good afternoon,
The below information is provided to you regarding alleged unauthorized work at 851 Gulf Shore Blvd N. Naples, FL,
34102. Mr. Myers sent an email about an ongoing project in Naples FL to the SAJ general email inbox at approx.
1500 on 28 February 2024. It was then forwarded to me as the RPA for the Ft. Myers USACE Permitting Office. Mr.
Myers requested via email and a phone conversation that he would like this matter to be immediately brought to
the attention of the USACE SAJ Enforcement Team and the FDEP. This because Mr. Myers clearly pointed out that
the Naples Golf and Beach Club neglected to obtain a permit from the USACE Jacksonville FL Regulatory Division. As
per the FDEP ERP Permit #387544-001 (page 2 & 3) "Your proposed activity as outlined on your application and
attached drawings does not qualify for Federal authorization pursuant to the State Programmatic General Permit
and a SEPARATE permit or authorization shall be required from the Corps. You must apply separately to the Corps
using their APPLICATION FOR DEPARTMENT OF THE ARMY PERMIT, ENG FORM 4345, or alternative as allowed by
their regulations". It is of note that the RPA for the Ft. Myers Permitting Office did not find a project on file in USACE
database for this project site. Also, the Supplemental Site Assessment Report (for Shelton Jaguar) 800 9th Street
North Naples, Florida is available upon request from Mr. Myers. In closing, Mr. Myers has been provided
information on how to contact the USACE SAJ Enforcement Team and we thank him for his concern for
environmental standards, state regulations and federal guidelines for projects in Waters of the United States
(WOTUS).

Mr. Greg Myers EMAIL 1 of 2
October 6, 2020, Environmental Resource Permit (ERP) for Permittee: Naples Golf and Beach Club, Inc.
Permit No: 387544-001 (Permit Expiration: October 5, 2025). See bottom of Page 2 of 10 and top of
Page 3 of 10 of the FDEP Permit:

Mr. Greg Myers EMAIL 2 of 2 (topo survey)
On Wednesday, February 28, 2024 at 05:10:03 PM EST, gregbmyers@verizon.net <gregbmyers@verizon.net> wrote:

**Information for the Public about USACE SAJ Enforcement Actions:**
**Regulatory Enforcement**

The Corps of Engineers' enforcement program is based on a policy of the regulation of the waters of the United States by discouraging activities that have not been properly authorized and by requiring corrective measures, where appropriate, to ensure those waters are not misused and to maintain the integrity of the program.
If a violation is suspected, steps are taken to inspect the suspected violation in a timely manner. The scheduling of investigations will reflect the nature and location of the suspected violations, the anticipated impacts, and the most effective use of inspection resources available. These investigations should confirm whether a violation exists, and if so, will identify the extent of the violation and the responsible parties.

The Corps may Issue orders requiring corrective action including removal of the unauthorized work and restoration, and/or in certain cases accept an after-the-fact permit application, initiate legal action, or recommend referral to the Environmental Protection Agency for administrative, civil or criminal penalties. The EPA has independent enforcement authority under the Clean Water Act for unauthorized discharges. The Corps works closely with the EPA to coordinate the most effective and efficient resolution of Section 404 Clean Water Act violations.  For appropriate cases, the Corps may recommend criminal or civil actions to obtain penalties for violations. Appropriate cases for criminal or civil action include, but are not limited to, violations which, in the Corps' opinion, are willful, repeated, flagrant, or of substantial impact.

**Helpful advice for avoiding enforcement actions:**
• Never initiate any activities in the waters of the United States without a Corps-issued Department of Army permit
• Obtaining a state permit does not obviate the need to obtain a permit from the Corps of Engineers
• Read all permit conditions, both general and specific
• Adhere to all permit conditions
• Contact the Corps for any post-permitting changes or accidental fills
• When in doubt, call the Corps or email the Corps at SAJ-RD-Enforcement@usace.army.mil

A violation of the Clean Water Act involves the discharge of pollutants into navigable waters from a point source by any person without authorization or exemption. Individuals or organizations reporting a suspected Clean Water Act violation can assist the Corps investigation by providing information on the "alleged violation reporting form .
The Corps may issue orders requiring corrective action including

- Removal of the unauthorized work and restoration, and/or in certain cases accept an after-the-fact permit application Initiate legal action
- Recommend referral to the EPA for administrative, civil or criminal penalties.
- The EPA has independent enforcement authority under the Clean Water Act for unauthorized discharges. The Corps works closely with the EPA to coordinate the most effective and efficient resolution of Section 404 Clean Water Act violations.

Link for the public to report a violation. https://www.saj.usace.army.mil/Missions/Regulatory/Enforcement/ or call 904-232-1177.

Best Regards,
Luigi (Lou) Federici.
Regulatory Program Assistant
USACE Jacksonville District
701 San Marco Blvd
Jacksonville, FL 32207-8175
📱 (904) 860-7400 (Cellular is Primary Phone)
☎ (904) 570-4510 (Non-Telework)
✉ Luigi.G.Federici@usace.army.mil

**From:** SAJ-RD <saj-rd@usace.army.mil>
**Sent:** Wednesday, February 28, 2024 3:13 PM
**To:** SF.New.Applications <SF.New.Applications@usace.army.mil>
**Subject:** FW: [Non-DoD Source] Violation of National Environmental Policy Act (NEPA)

FYA

Thanks

Yolanda A. Bringhurst
Division Secretary
Regulatory Division
Jacksonville District
(904) 232-1177

**From:** gregbmyers@verizon.net <gregbmyers@verizon.net>
**Sent:** Tuesday, February 27, 2024 2:36 PM
**To:** Hamor, Michelle L CIV USARMY CENAO (USA) <Michelle.L.Hamor@usace.army.mil>; SAJ-RD <saj-rd@usace.army.mil>
**Cc:** gregbmyers@verizon.net
**Subject:** [Non-DoD Source] Violation of National Environmental Policy Act (NEPA)

Dear Michelle L. Hamor:

On February 20, 2024, I asked a number of questions in your presentation to the City of Naples City Council, specifically with respect to the Naples Beach Club development (124.3 acres in the heart of the City of Naples, stretching from the Gulf of Mexico to U.S. 41).

The Naples Beach Club submitted a fraudulent application to FEMA in order to obtain an illegal Letter of Map Revision (LOMR) including, without limitation, failing to obtain proper documentation showing compliance with Section 7(a)(2) of the Endangered Species Act (ESA). The City of Naples swept this corruption under the rug.

Troublingly, the City's Flood Plain Coordinator who signed the FEMA application on September 29, 2020, subsequently resigned after having admitted during an ethics investigation that she had accepted payments from private developers seeking to obtain building permits from the City of Naples. The LOMR application was predicated on **fabricated topo data**. Furthermore, the "proposed project" does not meet the City of Naples floodplain management requirements, including without limitation, building "dry floodproofed" structures west of GSBN in the Coastal High Hazard Area in violation of ASCE 24, FBC, and 44 CFR 59 and 60.

The Naples Beach Club is also currently pumping contaminated groundwater into the Gulf of Mexico in violation of the Clean Water Act (CWA). See email dated September 13, 2023, copy attached:

> According to the Earth Systems Report, the "concentrations of Naphthalene and 2-Methynaphthalene also exceeded their respective Chapter 62-777, FAC Natural Attenuation Default Concentrations (NADCs)." *** According to the U.S. Department of Health and Human Services (HHS), "naphthalene is reasonably anticipated to be a human carcinogen," with 1-Methylnaphthalene and 2-Methynaphthalene being identified as "naphthalene-related

compounds." *** Under the EPA 1986 cancer guidelines, "naphthalene was assigned to Group C – possible human carcinogen."

The Naples Beach Club is required to obtain a permit under section 404 of the CWA. As Federal approval is a prerequisite to the development of the Naples Beach Club project, said project is subject to Federal control and responsibility. Because the Naples Beach Club project will have **significant impacts on the quality of the human environment**, the USACE must prepare an Environmental Impact Statement (EIS) and issue a record of decision (ROD). Accordingly, pursuant to the National Environmental Policy Act (**NEPA**), I respectfully demand that the USACE immediately issue a **full stop work order** for the Naples Beach Club project until an EIS can be completed, including providing the residents of the City of Naples with an opportunity for public comment and a full and fair discussion of the significant environmental impacts and the reasonable alternatives which would avoid or minimize adverse impacts or enhance the quality of the human environment.

I appreciate your prompt response to this very serious and time-sensitive matter.

Gregory Myers
700 Gulf Shore Blvd. N.
Naples, Florida 34102
(301) 325-2312



smime.p7s
6.4kB

20230913_EMAIL to CC_Contaminated Groundwater.pdf
194.1kB

200914_26-049-851GulfShoreBlvd-LOMR-09-14-20-Report_Signed Carrera.pdf
2.7MB

201006_FDEP ERP Permit #387544-001.pdf
19.1MB

Jurisdiction Diagrams.pdf
266.9kB